IN THE COURT OF COMMON PLEAS
ALLEN COUNTY, OHIO 2010 JUN -7 PM 2:20

CV 2010 0564
Case No. _____

Judge: **WARREN**

| | |
|---|---|
| WHEMCO-OHIO FOUNDRY, INC., <br> 1600 McClain Road <br> Lima, Ohio 45804 <br><br> Plaintiff, <br><br> v. <br><br> THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, <br> One State Street <br> P.O. Box 5024 <br> Hartford, CT 06102 <br><br> and <br><br> c/o CT Corporation System <br> 1300 East Ninth Street <br> Cleveland, Ohio 44114 <br><br> Defendant. | **COMPLAINT** <br><br> (Other Civil: Declaratory Judgment, Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing) <br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff WHEMCO-Ohio Foundry, Inc. ("Whemco"), by its undersigned counsel, brings this action against Defendant The Hartford Steam Boiler Inspection and Insurance Company ("HSB"), and in support thereof, alleges as follows:

**NATURE OF THE ACTION**

1. Whemco brings this insurance coverage action against HSB for declaratory judgment pursuant to Ohio Revised Code Chapter 2721 and Rule 57 of the Ohio Rules of Civil

PI-2288270

Procedure, and for damages for breach of contract and breach of the implied covenant of good faith and fair dealing. Whemco seeks to have this Court declare the rights of Whemco and the duties and obligations of HSB under an insurance policy providing equipment breakdown coverage to Whemco.

2. Whemco seeks payment of more than $5.46 million under coverages for property damage, business income and extra expense in connection with losses sustained and costs incurred as a result of an accident involving the vertical spin caster at Whemco's manufacturing facility in Lima, Ohio. Whemco also seeks relief for HSB's breach of its contractual obligations and its implied covenant of the duty of good faith and fair dealing in adjusting and handling Whemco's claim.

## THE PARTIES

3. Plaintiff WHEMCO-Ohio Foundry, Inc. is a corporation with a principal place of business at 1600 McClain Road, Lima, Ohio 45804. Whemco is a lower-tier subsidiary of Park Corporation.

4. Defendant The Hartford Steam Boiler Inspection and Insurance Company is an insurance company with its principal place of business at One State Street, Hartford, Connecticut 06102. At all relevant times, HSB was and is authorized to transact business in Ohio and does transact business in Ohio.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter and the parties pursuant to Ohio Revised Code §§ 2305.01 and 2307.382, because defendant HSB, within the time period relevant to the claims asserted herein, has been licensed to do business in Ohio and has contracted to insure persons, property, or risks located within Ohio.

6. Venue is proper in Allen County pursuant to Rule 3(B)(5) and (6) of the Ohio Rules of Civil Procedure because a substantial part of the events or omissions giving rise to Whemco's claims occurred, and the property that is the subject of this action is situated, in Allen County.

7. This Court has the authority to grant Whemco's request for declaratory relief under Ohio Revised Code § 2721.02(A).

## THE ACCIDENT

8. Whemco owns and operates a facility in Lima, Ohio (the "Lima Plant" or the "Plant"), which produces large, cast metallic rolls of various specifications for use by customers in a variety of manufacturing applications, including for the rolling of steel in hot strip mills.

9. The Lima Plant casts rolls using a vertical spin caster (the "Spin Caster"). A roll is cast by pouring molten metal into a casting assembly while being rotated by the Spin Caster along its central axis. The centrifugal force generated by the Spin Caster results in more reliable, higher-quality castings than could be produced by static casting.

10. On December 18, 2008, while the Spin Caster was in operation, a number of the bolts securing the casting assembly failed, causing the assembly to fly apart, and resulting in substantial physical damage to the Spin Caster and other property and equipment in the Lima Plant (the "Accident"). No one was injured in the Accident.

11. The property damage caused by the Accident rendered normal operation of the Plant impossible for an extended period, causing Whemco to lose business income and incur significant expenses to reduce its losses and continue operation of its business to the extent possible while repairs were made.

-3-

## THE POLICY

12. In exchange for the payment of a substantial premium, HSB sold to Park Corporation, Whemco's ultimate parent company, insurance policy FBP8925470 which provided equipment breakdown coverage for the period September 1, 2008 to September 1, 2009 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit A hereto.

13. Whemco, as a lower-tier subsidiary of Park Corporation, is a Named Insured on the Policy pursuant to the Policy's Named Insured Endorsement.

14. Whemco's Lima Plant is included among the covered locations identified by the Policy's Schedule of Locations.

15. Among other coverages, the Policy includes coverages for Property Damage, Business Income and Extra Expense.

### A. Property Damage Coverage

16. With respect to Property Damage, the Policy provides:

> We will pay for physical damage to "covered property" that is at a location indicated in the Declaration at the time of the "accident."

17. The Policy defines "covered property" to mean:

> property that you own or property that is in your care, custody or control and for which you are legally liable. Such property must be at a location described in the Declarations . . . .

18. The Policy defines "accident" to mean:

> a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:
> 
> (1) Mechanical breakdown, including rupture or bursting caused by centrifugal force;
> 
> * * *

      (6) Bursting, cracking or splitting.

19. The Policy defines "covered equipment" to mean:

      (1) Unless specified otherwise in the Declarations:

          (a) Equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment;

          (b) Equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

20. The Policy's Declarations further provides that "covered equipment":

    does not include any die, mold, pattern, bolster or extrusion plate.

21. The Policy's Declarations also provide that "Equipment 30 years or older will be valued at Actual Cash Value."

22. However, the Policy does not define the terms "equipment" or "Actual Cash Value," providing only that "Actual Cash Value includes deductions for depreciation."

23. Property Damage coverage is subject to a $100,000,000 limit of liability and a $250,000 deductible.

    **B.**   **Business Income Coverage**

24. In addition to Property Damage coverage, the Policy also includes Business Income coverage, which provides:

      (1) We will pay your actual loss of "business income" during the "period of restoration" that results directly from the necessary total or partial interruption of your business.

      (2) We will also pay any necessary expenses you incur during the "period of restoration" to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that

- 5 -

>> otherwise would have been payable under this coverage.
>
> (3) We will consider the actual experience of the business before the "accident" and the probable experience you would have had without the "accident" in determining the amount of our payment."

25. The Policy defines "business income" to mean the sum of:

>> a. The Net Income (net profit or loss before income taxes) that would have been earned or incurred; and
>
>> b. Continuing normal and necessary operating expenses incurred, including employee payroll.

26. The Policy defines "period of restoration" to mean:

> the period of time that begins at the time of the "accident" and continues until the earlier of:
>
>> a. The date the physical damage to "covered equipment" is repaired or replaced; or
>
>> b. The date on which such damage could have been repaired or replaced with the exercise of due diligence and dispatch.
>
> plus the number of days, if any, shown in the Declarations for Extended Period of Restoration.

27. The Policy's Declarations provides for an Extended Period of Restoration of five days.

28. Business Income coverage is subject to a $100,000,000 limit of liability and a deductible of ten times the Lima Plant's "Average Daily Value." The "Average Daily Value" is the "business income" that would have been earned during the period of restoration had no "accident" occurred, divided by the number of working days in that period.

C. **Extra Expense Coverage**

29. In addition to Property Damage and Business Income coverages, the Policy also includes Extra Expense coverage, which provides:

- 6 -

> We will pay the reasonable and necessary "extra expense" to operate your business during the "period of restoration."

30. The Policy defines "extra expense" to mean:

> the additional cost you incur to operate your business over and above the cost that you normally would have incurred to operate your business during the same period had no "accident" occurred.

## HSB'S WRONGFUL FAILURE AND/OR REFUSAL TO PAY WHEMCO'S CLAIM

31. Whemco provided timely notice to HSB of its damages, losses and expenses arising out of the Accident (the "Claim") and requested coverage in accordance with the terms of the Policy.

32. HSB's investigation confirmed that an accident covered by the Policy occurred when the Spin Caster was damaged.

33. Whemco has provided HSB full access to the Lima Plant to conduct all requested inspections; has responded in a timely manner to all inquiries regarding Whemco's operations, the Accident, and the repair process; and has otherwise extended its complete cooperation to HSB to facilitate prompt adjustment of its Claim.

34. Whemco has submitted to HSB voluminous and detailed documentation and financial information supporting its Claim, and has repeatedly pressed HSB for an adjustment of its Claim and payment of all liquidated and covered Claim amounts. Each of Whemco's submissions provided HSB with sufficient information to determine the existence and amount of Whemco's Claim.

35. Nearly a year and a half has passed since the Accident occurred. During that time, Whemco has regularly communicated through written correspondence, in-person meetings

and telephone calls with HSB and its representatives concerning the Claim, and has responded to a seemingly endless series of requests for information posed by HSB and its representatives.

36. On September 24, 2009, Whemco submitted proofs of loss to HSB, which summarized and reasserted Whemco's prior claim submissions.

37. Whemco has incurred property damage losses totaling $1,760,418.53, and combined business income losses and extra expenses totaling $5,958,790, all as a direct result of the Accident.

38. To date, however, HSB has paid only $232,877.88 toward the property damage component of Whemco's Claim, and only $1,290,716 toward the business income loss and extra expense components.

39. Therefore, after subtracting the applicable deductibles, HSB has failed or refused to pay at least $1,277,540.65 of Whemco's property damage losses and at least $4,191,184 of Whemco's combined business income loss and extra expense.

40. Accordingly, although nearly one and a half years have passed since the date of the Accident, and more than seven months since Whemco submitted its proofs of loss, HSB has paid less than 22% of Whemco's covered losses, leaving Whemco to bear the burden of over $5.46 in unreimbursed losses.

41. The failure and refusal of HSB to agree to cover the entirety of Whemco's Claim, its failure to timely adjust and pay Whemco's Claim, and its failure to timely respond to communications and requests for information from Whemco are without reasonable justification and constitute breaches of HSB's obligations under the Policy and violations of its implied covenant of good faith and fair dealing.

## COUNT I
### Declaratory Judgment

42. The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

43. As a result of the Accident, Whemco has incurred substantial losses, damages and expenses that are covered under the terms of the Policy.

44. All premiums have been paid, and the Policy is in full force and effect.

45. Any and all alleged conditions precedent to Whemco's Claim under the Policy have either been satisfied, waived, excluded or do not need to be performed because HSB would not be prejudiced by such non-performance.

46. HSB has failed to fulfill its obligations to Whemco with respect to Whemco's Claim.

47. Upon information and belief, HSB disputes Whemco's contentions regarding the extent of Whemco's covered losses, damages and expenses, and/or the extent of HSB's obligations under the Policy, and HSB contends that all or some of Whemco's Claim is not covered under the Policy.

48. By reason of the foregoing, an actual and justiciable controversy exists between Whemco and HSB with respect to Whemco's rights and HSB's duties and obligations under the Policy with respect to Whemco's Claim.

49. A declaration by this Court finding that Whemco's Claim is covered under the Policy is necessary to resolve the controversy between the parties. Moreover, a declaration by this Court is necessary to determine the rights of Whemco and the duties and obligations of HSB under the Policy and applicable law.

## COUNT II
### Breach of Contract

50. The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

51. All premiums have been paid and the Policy is in full force and effect.

52. Any and all alleged conditions precedent to Whemco's Claim under the Policy have either been satisfied, waived, excluded or do not need to be performed because HSB would not be prejudiced by such non-performance.

53. HSB has failed to indemnify Whemco in full with respect to its Claim and has failed expeditiously to adjust and pay Whemco's Claim.

54. HSB's refusal and failure to indemnify Whemco for its Claim and its failure to expeditiously adjust and pay its Claim constitute breaches of the Policy.

55. As a direct and proximate result of such breaches, Whemco has suffered and will continue to suffer damages in an amount in excess of $5.46 million to be proven at trial.

## COUNT III
### Breach of Implied Covenant of Good Faith and Fair Dealing

56. The allegations set forth in each and every preceding paragraph are incorporated herein by reference.

57. At all relevant times, HSB has been engaged in the trade or business of issuing equipment breakdown policies, including the Policy which is the subject of this action, and in administering and handling claims thereunder.

57. The Policy is a contract, and as such, contains an implied covenant of good faith and fair dealing.

- 10 -

58. HSB has consciously, willfully and maliciously breached the implied covenant of good faith and fair dealing under the Policy and applicable state law by, among other things:

   a. delaying critical repairs at the Lima Plant by raising an untimely demand that its own designated vendor be permitted to inspect the damages and provide a quote;

   b. purporting to determine the replacement cost of the Spin Caster on the basis of "quotes" for "market prices" and "market research" when in fact no such quotes were obtained nor market research conducted, and failing and/or refusing to provide Whemco with a copy of the purported analysis on which it relied;

   c. agreeing to contact qualified vendors identified by Whemco in order to assess the true replacement cost of the Spin Caster only to subsequently retract that agreement and rely on an incomplete, sham "quotation" from an unqualified vendor that had no apparent experience designing, manufacturing and installing vertical spin casters;

   d. misrepresenting policy provisions in order to limit and/or refuse payment for covered property and equipment that clearly fall within the Policy's scope of coverage;

   e. failing to timely respond to Whemco's September 24, 2009 proofs of loss;

   f. failing to respond in a timely manner to communications from Whemco's representatives regarding the Claim;

   g. failing and/or refusing to timely meet with Whemco's representatives to facilitate prompt resolution and final adjustment of the Claim; and

h. failing and/or refusing unreasonably and in bad faith to fully pay the full amount of its Claim even though HSB had all necessary information to conclude that such Claim was covered under the terms of the Policy;

59. By the above-described actions or failures to act, HSB has breached its implied covenant of good faith and fair dealing under the Policy.

60. As a direct and proximate result of HSB's breaches of the implied covenant of good faith and fair dealing, Whemco has suffered damages, and is entitled to recover punitive and consequential damages.

## PRAYERS FOR RELIEF

WHEREFORE, Whemco requests the following relief:

a. On Count I, that the Court declare HSB's duties and obligations under the Policy and applicable law, including but not limited to coverage and payment of the amounts owed for the past and future losses, damages and expenses incurred by Whemco as a result of the Spin Caster accident;

b. On Count II, that the Court award Whemco direct, indirect, consequential and incidental damages in an amount in excess of $5.46 million to be proven at trial, and attorney's fees, with pre- and post-judgment interest in the maximum amount allowed by law;

c. On Count III, that the Court award Whemco punitive and consequential damages for HSB's beach of the implied covenant of good faith and fair dealing;

d. On all Counts, that the Court award Whemco its reasonable fees, costs and expenses, including attorneys fees; and

e. On all Counts, that the Court award Whemco any and all further relief to which the Court deems Whemco is entitled at law or equity.

## DEMAND FOR JURY TRIAL

Plaintiff WHEMCO-Ohio Foundry, Inc. demands a trial by jury as to all counts set forth in the above Complaint.

Dated: June 7, 2010

BROUSE McDOWELL

Paul A. Rose (0018185)
prose@brouse.com
388 South Main Street
Suite 500
Akron, Ohio 44311
(330) 535-5711
(330) 253-8601 (fax)

*/s/ Keven Eiber*
Keven Drummond Eiber (0043746)
keiber@brouse.com
600 Superior Avenue East
Suite 1600
Cleveland, Ohio 44114
(216) 830-6830
(216) 830-6807 (fax)

OF COUNSEL:

Neal R. Brendel
neal.brendel@klgates.com
Paul C. Fuener
paul.fuener@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222-2613
(412) 355-6500
(412) 355-6501 (fax)

Counsel for Plaintiff,
WHEMCO-Ohio Foundry, Inc.